J-S09007-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| BRYCE RINKHOFF, INDIVIDUALLY AND AS A MANAGER OF RINKHOFF AGRICULTURAL ENTERPRISES, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| | No. 132 WDA 2018 |
| ERIC ELIA BONONI, ESQUIRE, INDIVIDUALLY AND AS MANAGER OF RINKHOFF AGRICULTURAL ENTERPRISES, LLC., CLINT RINKHOFF, INDIVIDUALLY AND AS MANAGER OF RINKHOFF AGRICULTURAL ENTERPRISES, LLC, BARRY RINKHOFF, INDIVIDUALLY AND AS MANAGER OF RINKHOFF AGRICULTURAL ENTERPRISES, LLC, AND GRANT RINKHOFF, INDIVIDUALLY AND AS MANAGER OF RINKHOFF AGRICULTURAL ENTERPRISES, LLC | |

Appeal from the Order Dated December 14, 2017
In the Court of Common Pleas of Greene County
Civil Division at No(s):  888 A.D. of 2017

BEFORE:   PANELLA, P.J., LAZARUS, J. and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY STRASSBURGER, J.:

FILED NOVEMBER 08, 2019

_____

[*] Retired Senior Judge assigned to the Superior Court.

Because I find the trial court erred in the disposition of this matter, I respectfully dissent.

As set forth in greater detail by the Majority, in 2017, Plaintiff, Bryce Rinkhoff (Rinkhoff), filed a petition for a preliminary injunction,[1] seeking to enjoin Bononi from conducting business on behalf of Rinkhoff Agricultural Enterprises, LLC ("RAE"), a company Rinkhoff jointly owns with his brothers. Rinkhoff also sought to restrain two of his brothers, Clint and Grant, from acting unilaterally without his consent on business matters, in contravention of RAE's operating agreement. On December 12, 2017, "[t]he trial court granted Appellant's preliminary injunction without a hearing and enjoined Bononi, Clint, and Grant from taking further action on behalf of RAE [("December 12th Order")]." Majority at 2-3. Additionally, the trial court directed a hearing be scheduled within five days of the date of the order.

Thereafter, on December 14, 2017, the trial court held a "hearing" on the matter. It is difficult to discern what exactly occurred before the trial court on that day. It appears the hearing served, in large part, as a quasi-mediation, wherein the trial court conducted an off-the-record meeting in chambers in an attempt to elicit an agreement among the parties to resolve the underlying dispute. The parties emerged without an agreement, and the

_____

[1] This is not a correct way to commence a civil action. Pa.R.C.P. 1007 provides that an action my be commenced by filing a praecipe for a writ of summons, or by a complaint. However, Defendants did not object and were not prejudiced by this procedure.

- 2 -

trial court ultimately entered an order ("December 14th Order") "prohibiting Bononi from executing contracts on behalf of RAE. However, the order allowed Bononi to remain as external manager for the limited purpose of maintaining accounts receivable and accounts payable. The trial court also ordered that each brother receive $100,000 from [RAE], which each brother could then invest as he might see fit." Id. At 3-4.

Most notably, the order stated specifically that "in consideration of the record, and statements made on and off the record, the [trial court] ORDERS this matter continued for thirty (30) days[.]" December 14th Order (emphasis in original). Rinkoff appeals from this order. Specifically, Rinkhoff "appears to challenge the procedural defects at the injunction hearing, and the equitable relief granted by the trial court." Majority at 4. Of significance, Rinkhoff asserts that the order amounted to a permanent injunction, because it "made permanent and irreversible changes to the business operation of the company." Rinkhoff's Brief at 7. The Majority concurs with Rinkhoff, concluding that while "the trial court did not specify the relief it was granting," the resulting order was "a permanent injunction." Majority at 6.

Admittedly, it is unclear exactly what the trial court was attempting to accomplish at the December 2017 scheduled hearing. The informal nature of the injunction proceeding itself, and the off-the-record discussions that occurred, only contribute to this confusion. Despite the lack of clarity, I find that, whatever the hearing was and whatever the order eventuating was, the

December 2017 hearing was not a permanent injunction hearing, nor was the December 14th Order a permanent injunction. That order purported only to continue the preliminary injunction. In so concluding, I find the statements of the trial court at the injunction hearing illuminating. See N.T., 12/14/2017, at 57 ("[T]he [trial c]ourt feels that it is ready to issue an interim order that is very imperfect, and yet is intended to put everyone on a path to further considering the issues, and possibly coming to an agreement.") (emphasis added); Id. at 79 ("You've now had your day in -- let's say formal/informal [c]ourt[.]"); Id at 92 ("[T]he [trial c]ourt orders this matter continued for thirty days, to a time and place set by the Court Administrator."); Id. at 97 ("Well, I'm trying to negotiate a standstill agreement[.]").

The transcript of the injunction proceeding also reveals that what was originally scheduled as a hearing, was conducted very informally, with a large focus on an attempt to mediate the dispute, with the goal of resolving the issues between the parties. See id. at 76 ("I have attempted to mediate it, -- … and I will continue to[.]"); Id. at 83 (discussing the parties willingness to attend mediation).

Additionally, the trial court's statements at a subsequent proceeding and later, in a memorandum and order, confirm that the December 2017 proceeding was not intended to serve as a final hearing on Rinkhoff's requested relief. See N.T., 1/10/2017, at 5-6 ("[F]rom my perspective, it's a continuation of the hearing we had … to attempt to seek understanding and

agreement. If it can't be done, then we'll have a full-blown hearing") (emphasis added). See also Memorandum and Order, 1/12/2017, at 4 ("[That] by stipulation, and in consideration of th[e trial c]ourt's calendar, by [o]rder dated December 14, 2017, the [p]reliminary [injunction h]earing was continued for [30] days[.]") (unnumbered); Id. at 5 (noting that the trial court granted Bonini's motion for a distribution of $100,000 to each member, "as an urgent need for interim relief until the case could be heard on the merits.") (unnumbered).

However, it is well-settled that "[i]n reviewing an injunctive decree, an appellate court must look to the nature of the relief granted in order to determine whether it was a preliminary or permanent injunction. The label attached by the trial court to the proceedings or the relief granted is not controlling." Soja v. Factoryville Sportsmen's Club, 522 A.2d 1129, 1132 (Pa. Super. 1987). While I find the certified record confirms that the December 14th Order was intended to serve as an "interim," "standstill" order,[2] the order went outside the scope of a preliminary injunction, insomuch as it went beyond maintaining the status quo. Thus, I find that the trial court, in

_____

[2] In fact, as set forth supra, the trial court acknowledged that it had yet to hold a hearing on the merits. Despite its intent to continue the hearing, an outcome to which it appears all parties agreed, the trial court nonetheless issued the December 14th Order that effectively modified the existing December 12th Order.

contemplation of further proceedings, modified an existing preliminary injunction without making any determination as to whether Rinkhoff established the six prerequisites[3] required to obtain injunctive relief. Thus, as a preliminary injunction, the order of December 14th is faulty.

Nor can the order be a permanent injunction. In Wolk v. School District of Lower Merion, 197 A.3d 730 (Pa. 2018), our Supreme Court held it was improper to issue a permanent injunction without the filing of post-trial motions. A fortiori, such is improper without any pleadings but a complaint substitute. Nor did Appellant waive any issues by not raising them below. It was impossible to tell what the trial judge was doing until the order of December 14th was filed and thus, Appellant's issues could not have been raised before that.

_____

[3] To obtain a preliminary injunction, the moving party must show:

> 1) "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest."

Warehime v. Warehime, 860 A.2d 41, 46–47 (Pa. 2004).

Due to the procedural quagmire and the trial court's unorthodox handling of the instant matter, I would vacate the December 14th Order and remand this case to the trial court with direction that the trial court dispose of this matter under the appropriate legal standard, as outlined supra. In light of the foregoing, I respectfully dissent.